*Vacated and the case remanded for further proceedings.*

UNITED STATES, Appellee,

v.

Robert PALEO, Defendant, Appellant.

UNITED STATES, Appellant,

v.

Robert P. PALEO, Defendant, Appellee.

Nos. 90–1598, 90–1774.

United States Court of Appeals,
First Circuit.

Argued Jan. 9, 1992.

Decided June 15, 1992.

Memorandum and Order on
Denial of Rehearing
Aug. 18, 1992.

Mark G. Miliotis, by appointment of the Court, with whom Miliotis & McQuade, Boston, Mass., was on brief for defendant-appellant.

Carole S. Schwartz, Sp. Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief for appellee.

Before BREYER, Chief Judge, ALDRICH, Senior Circuit Judge, and SELYA, Circuit Judge.

BREYER, Chief Judge.

Robert Paleo entered a guilty plea to a charge of unlawful gun possession. 18 U.S.C. § 922(g)(1) (forbidding previously convicted felons from possessing firearms). The district court sentenced him to a prison term of twenty-one months, 738 F.Supp. 611. Both sides appeal.

Paleo claims that the court should have granted his motion to suppress (on constitutional grounds) the government's most important evidence, the gun itself. We find Paleo's arguments unconvincing, and we affirm his conviction.

The government claims that the district court should have counted, for purposes of a sentence-enhancement statute, several prior convictions that Paleo argued were constitutionally invalid. 18 U.S.C. § 924(e) (fifteen-year mandatory minimum sentence). The government's primary argument is that an offender, at the time of federal sentencing, normally cannot attack a prior conviction (offered to enhance a present sentence) as constitutionally invalid—at least, not where other, "unexhausted," remedies remain available. We reject this argument. Nonetheless, because we agree with several of the government's

subsidiary arguments, we remand this case for resentencing.

## I

### Paleo's Appeal

██ Paleo pled guilty to the gun-possession charge under a plea agreement that reserved his right to bring this appeal. He asks us to find that the police unconstitutionally seized his gun, and that the district court therefore should have granted his motion to suppress the gun as evidence. After reviewing the record, however, we are convinced that the district court's refusal to suppress the evidence was legally proper.

The record of the suppression hearing indicates that, on the evening of February 8, 1989, two Massachusetts state police officers, present in an area of suspected drug activity, observed a speeding car and signaled the car to stop. The car did not stop. The officers chased the car. The car ran a red light. After a several-block chase, the officers succeeded in stopping the car, facing into traffic. As the officers approached the car, one of them noticed the car's passenger, Paleo, put something in his mouth. Suspecting that the "something" was narcotics, the officer told Paleo to "spit it out." At the same time, the officer opened the passenger door and reached towards Paleo's mouth, perhaps touching him. Paleo then said, "Don't shoot; I have a gun." The officer patted Paleo's jacket, noticed a hard object, removed it, discovered it was a gun with the serial number filed off, ordered Paleo out of the car, and arrested him.

We can find nothing unconstitutional in this course of events. The law allows officers to stop a speeding vehicle and to approach such a vehicle, once stopped, for investigation. *Pennsylvania v. Mimms*, 434 U.S. 106, 109–11, 98 S.Ct. 330, 332–34, 54 L.Ed.2d 331 (1977) (per curiam) (upholding officer's stop of vehicle for expired license tags and order to driver to get out of car); *United States v. Lott*, 870 F.2d 778, 784 (1st Cir.1989) (driver's failure to obey traffic signs and other minor violations justified stop). The law also permits an officer, in the course of such investigation, to take actions that a "'reasonable and cautious police officer on the scene, guided by his experience and training,'" *United States v. Trullo*, 809 F.2d 108, 112 (1st Cir.) (quoting *United States v. Hall*, 525 F.2d 857, 859 (D.C.Cir.1976)), *cert. denied*, 482 U.S. 916, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987), in light of the "facts available to the officer at the moment," would consider "appropriate." *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–1880, 20 L.Ed.2d 889 (1968); *Michigan v. Long*, 463 U.S. 1032, 1045–52, 103 S.Ct. 3469, 3479–82, 77 L.Ed.2d 1201 (1983); *United States v. Jackson*, 918 F.2d 236, 238 (1st Cir.1990) (*Terry* standards apply to frisk of vehicle's occupants after "investigatory stop"). Given the suspected drug trade in the area, the car's flight from the police, Paleo's placing something in his mouth, the officer's ten years' experience with narcotics investigations, and the officer's testimony that, in his experience, "it is quite common for a person stopped on the street to dispose" of narcotics by trying to swallow them, it was "appropriate" for the officer to open the car door, order Paleo to "spit it out," and to reach for his mouth. *Trullo*, 809 F.2d at 111–12 (drug trade area and defendant's apparently "clandestine transaction," assessed in light of officer's experience and training, justified *Terry* search); *United States v. Stanley*, 915 F.2d 54, 56–57 (1st Cir.1990) (similar); *United States v. Gilliard*, 847 F.2d 21, 24–25 (1st Cir.1988) (similar), *cert. denied*, 488 U.S. 1033, 109 S.Ct. 846, 102 L.Ed.2d 978 (1989). In these circumstances, the officers could have ordered Paleo and the driver from the car, *see, e.g., Stanley*, 915 F.2d at 55; *Gilliard*, 847 F.2d at 22; *Trullo*, 809 F.2d at 109–10; and we can find no significant difference between such an order and the officer's reaching into the car and telling the passenger to "spit out" what the officer suspected was narcotics.

Moreover, as soon as the officer heard Paleo say he had a gun, he acted reasonably and lawfully in looking for, and taking, the gun. *Terry*, 392 U.S. at 27–31, 88 S.Ct. at 1883–1885; *Stanley*, 915 F.2d at 57; *Trullo*, 809 F.2d at 113–14. Once he

saw the serial number obliterated, he had sufficient grounds to place Paleo under arrest. Mass.Gen.L. ch. 269, § 11C (crime knowingly to possess gun with serial number removed).

Because we find the search and seizure lawful, we affirm Paleo's conviction.

## II

### *The Government's Appeal*

The government appeals the district court's sentence of twenty-one months imprisonment. 18 U.S.C. § 3742(b)(1). It points to a sentence-enhancement statute that requires a federal court to sentence, to a prison term of *at least fifteen years,* an offender convicted of the gun-possession offense to which Paleo pled guilty, 18 U.S.C. § 922(g)(1), *if* that offender has "three previous convictions ... for a violent felony." 18 U.S.C. § 924(e)(1). The government offered four previous convictions:

1) A June 18, 1980, conviction in Boston Municipal Court for "breaking and entering in the daytime with intent to commit a felony" (# 3343);

2) A different conviction on the same day in the same court for a different incident of the identical kind of crime, namely "breaking and entering in the daytime with intent to commit a felony" (# 5131);

3) A July 1, 1980, conviction in the same court for "breaking and entering a building at night with intent to commit a felony" (# 5634);

4) Two January 17, 1981, convictions in Suffolk Superior Court for "assault and battery with a dangerous weapon" and "armed robbery," both crimes arising out of a single incident.

The district court refused to count the three breaking and entering convictions as predicate offenses for sentence-enhancement purposes for two reasons, either of which would be sufficient. First, the court believed that the "breaking and entering" convictions were not convictions for "violent" felonies. Second, the court found that the convictions suffered from serious

constitutional infirmities. We shall consider these two grounds in turn.

### A

### *Violent Felonies*

The district court accepted Paleo's claim that his first "breaking and entering" conviction involved a confederate who broke into the building while Paleo remained in the car, that the second involved Paleo's walking off with stereo speakers left on the sidewalk, and that the third involved an uncompleted effort to break into a restaurant. The court said it could find nothing "violent" about these activities, and it held that they were not, under the sentence enhancement statute, "violent felonies."

The government correctly points out, however, that the Supreme Court held, shortly before the sentencing hearing, that what matters, for purposes of deciding whether a felony is "violent," is the statutory definition of the crime, not the way in which a particular offender carried out the crime on a particular occasion. *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 2160, 109 L.Ed.2d 607 (1990); *see also United States v. Harris,* 964 F.2d 1234, 1235–36 (1st Cir.1992); *United States v. Doe,* 960 F.2d 221, 223–224 (1st Cir.1992). Moreover, for purposes of this same sentence-enhancement statute, the generic crime of breaking and entering a building (with intent to commit a felony) is a "violent felony." *Taylor,* 110 S.Ct. at 2158.

As the Supreme Court also pointed out, sometimes a particular statutory provision refers to several different crimes, some of which are "violent" and others of which are not. The "breaking and entering" statutes in the present case, for example, refer to breaking into a "building, ship or vessel with intent to commit a felony." Mass. Gen.L. ch. 266, § 16 (amended 1989) (Paleo's first and second prior convictions); *id.,* § 18 (amended 1985) (Paleo's third prior conviction). Breaking into a building is a violent felony; breaking into a ship or vessel apparently is not. *Taylor,* 110 S.Ct. at 2158–59; *United States v. Bregnard,* 951 F.2d 457, 459–60 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2939, 119

L.Ed.2d 564 (1992); *United States v. Wilkinson*, 926 F.2d 22, 29 (1st Cir.), *cert. denied,* ——— U.S. ———, 111 S.Ct. 2813, 115 L.Ed.2d 985 (1991). As we have previously explained, when faced with such a statute, the sentencing court is to examine the indictment, jury instructions, or other relevant materials (including appropriate descriptions in the presentence report), to determine which statutory crime—the violent crime or the nonviolent crime—was at issue. *Harris,* 964 F.2d at 1235; *Doe,* 960 F.2d at 224; *Bregnard,* 951 F.2d at 459–60; *see also Taylor,* 110 S.Ct. at 2160. Here, the record contains charging documents that make clear that Paleo's first and third convictions were for breaking into a "building," not for breaking into a "ship or vessel." Hence, the convictions were for "violent felonies." The record is silent as to the nature of the second conviction. The parties may pursue the nature of that conviction on remand, if necessary.

## B

### *Challenging the Constitutionality of Prior Convictions*

The district court also refused to count Paleo's prior convictions because it accepted Paleo's claims that two of those convictions were the products of guilty pleas entered after the judges conducted colloquies that were constitutionally inadequate, and that the third conviction included constitutionally inadequate *re*sentencing proceedings. The government argues that the court should not have permitted Paleo to attack the constitutional validity of these prior convictions. It says that a federal sentencing court should not consider a defendant's claim that a prior conviction suffers from a constitutional defect (except the defect of "lack of counsel," *see Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967)), at least if the defendant might still attack the lawfulness of the prior conviction in a state court proceeding. The government fears that any contrary rule would mean frequent and inappropriate relitigation of previous state convictions in federal sentencing proceedings, thereby complicating and delaying those proceedings while defendants raise a host of new legal challenges to old convictions. Paleo, says the government, should have returned to state court to attack the prior convictions; unless, and until, the state system set those convictions aside, the federal sentencing court should have assumed their constitutional validity.

In our view, however, a federal defendant may challenge, in a sentencing proceeding, the constitutional validity of past convictions, used to increase his federal sentence. Case law uniformly holds, or indicates in strong dicta, that such collateral attacks *in sentencing proceedings* are permissible. *United States v. Gallman,* 907 F.2d 639, 642–44 (7th Cir.1990) (no voluntary and intelligent guilty plea), *cert. denied,* ——— U.S. ———, 111 S.Ct. 1110, 113 L.Ed.2d 219 (1991); *United States v. Dickerson,* 901 F.2d 579, 582 (7th Cir.1990) (same); *United States v. White,* 890 F.2d 1033, 1035 (8th Cir.1989) (same); *United States v. Taylor,* 882 F.2d 1018, 1031 (6th Cir.1989) (no knowing or voluntary waiver of constitutional rights before plea), *cert. denied,* 496 U.S. 907, 110 S.Ct. 2592, 110 L.Ed.2d 273 (1990); *United States v. Clawson,* 831 F.2d 909, 914–15 (9th Cir.1987) (ineffective assistance of counsel), *cert. denied,* 488 U.S. 923, 109 S.Ct. 303, 102 L.Ed.2d 322 (1988); *see also United States v. Patrone,* 948 F.2d 813, 817 (1st Cir.1991) (strongly suggesting challenge at sentencing proceeding permissible); *cf. United States v. Unger,* 915 F.2d 759, 761–62 (1st Cir.1990) (challenge permissible in similar, Sentencing Guidelines context), *cert. denied,* ——— U.S. ———, 111 S.Ct. 1005, 112 L.Ed.2d 1088 (1991); *United States v. Jones,* 907 F.2d 456, 460–61, 465 (4th Cir. 1990) (same).

This case law is not surprising. After all, a correct determination of constitutionality is critically important to defendants, for many years of prison time may turn on whether or not the past conviction was constitutionally valid. Indeed, the Supreme Court has held that prior convictions, in which the defendant was denied his constitutional right to counsel, are an impermissible basis for increasing a defendant's sentence. *United States v. Tucker,* 404 U.S. 443, 447–49, 92 S.Ct. 589, 591–593,

30 L.Ed.2d 592 (1972); *Burgett,* 389 U.S. at 114–15, 88 S.Ct. at 261–62. At the same time, the federal government has no recognizable interest in imprisoning a defendant on the basis of convictions that are constitutionally invalid. Moreover, the federal courts are accustomed to dealing with "collateral attacks" on previous convictions. 28 U.S.C. §§ 2254, 2255 (habeas corpus). And, they have developed methods for resolving them.

The government, responding to this authority, makes three basic arguments, which we do not find convincing. First, the government, seeking to distinguish only the Supreme Court authority, argues that we should consider the *Burgett* line of cases as limited to the *particular* kind of constitutional violation there at issue, namely lack of counsel. The Supreme Court itself, however, has expressed no such limitation. And, one can easily imagine other constitutional violations—coerced confessions, highly intrusive searches— that, from a constitutional perspective, seem equally egregious and equally improper for a later sentencing court to overlook.

Second, the government, claiming that the lower court authority we have cited is wrong, urges a strict analogy to habeas corpus, and argues that a federal sentencing court should therefore require "exhaustion" of alternative (state appellate and collateral) avenues of attack on past convictions before itself considering a constitutional challenge. *Rose v. Lundy,* 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982); *Nadworny v. Fair,* 872 F.2d 1093, 1096–97 (1st Cir.1989); *United States v. Gaylor,* 828 F.2d 253, 254–56 (4th Cir. 1987); *Stead v. Link,* 540 F.2d 923, 925 (8th Cir.1976).

The problem with this argument is that, although the analogy to habeas is relevant (for it shows that federal courts do reexamine old convictions), its *exhaustion* requirement is not. The primary reason that federal courts require a habeas petitioner first to exhaust state remedies is that exercise of federal habeas jurisdiction may set aside a state's sovereign act (a state judgment of conviction) and free an individual whom, otherwise, the state would imprison. Considerations of "comity"—"a proper respect for state functions" and "the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways," *Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971)—counsel caution in such circumstances.

Such "comity" considerations are absent (or less weighty), however, when a federal court refuses to rely on a state conviction as a basis for imposing a federal sentence for a federal crime. The federal court's reexamination of the past state conviction does not free a state prisoner or otherwise interfere with the state's authority. It simply decides the length of a new federal sentence, a matter of relative indifference to the state. What consideration of "comity" would warrant our harnessing a possibly overburdened state judiciary to a task that has so exclusively federal an aim? *See Brown v. United States,* 610 F.2d 672, 675 (9th Cir.1980) (no exhaustion requirement in non-habeas collateral challenges); *United States v. Bouthot,* 878 F.2d 1506, 1510–11 (1st Cir.1989) (same).

Third, the government argues that permitting constitutional attacks on past convictions will complicate and delay federal sentencing proceedings without much advancing the interests of justice. Prosecutors cannot readily obtain detailed procedural information about past convictions; defendants may well have such details in mind. A present challenge may simply put the prosecution to considerable work investigating ancient facts better known to the defendant. At the same time, such work may do no more than postpone the inevitable, for, if the defendant's challenge were meritorious, why would he not have made it before, say at the time of his prior conviction (or soon thereafter), when a challenge would have helped the defendant escape that conviction's immediate effect (say, prison).

The problem with this argument is that it does not offer significant support for the government's conclusion, namely, a rule requiring federal sentencing courts to assume that properly attested past convic-

tions are constitutionally valid (while permitting defendant to contest them in other forums). Such a rule, seen from the perspective of the judicial system as a whole, would likely increase delay, as defendants are sent from one court to another to press their various challenges. It also may well increase complexity. What, for example, is a federal court to do when faced with a defendant's claim that no present state remedy exists for reviewing an old state conviction, the sentence for which the defendant has long since served? Is the federal court to begin a potentially complex investigation of state remedial law?

■ The better remedy for the practical problems to which the government points lies in the "burden of proof" rules that this court has suggested, and other courts have held, apply in these circumstances. The federal sentencing court will normally accept as valid a properly evidenced past conviction. Unless it reveals unconstitutionality on its face, a certified copy of a court record of conviction, or a presentence report's account of a past conviction, will normally prove the fact of a valid conviction. *Wilkinson*, 926 F.2d at 28; *Bregnard*, 951 F.2d at 460; *Jones*, 907 F.2d at 465. Thus, the government need not anticipate every possible difficulty with each past conviction and then disprove it.

■ Should the defendant wish to challenge the validity of a past conviction so evidenced, he must say that he wishes to do so, explain the constitutional defect, and convince the sentencing court that the conviction was indeed obtained in violation of the federal Constitution. He, after all, is in the best position to know the procedural facts surrounding the prior conviction and to overcome any skepticism arising out of the lateness of the challenge. *United States v. Henry*, 933 F.2d 553, 559 (7th Cir.1991) (defendant bears the burden of proving unconstitutionality of prior convictions), *cert. denied,* —— U.S. ——, 112 S.Ct. 1703, 118 L.Ed.2d 412 (1992); *Gallman*, 907 F.2d at 643 (same); *Taylor*, 882 F.2d at 1031 (same); *see also Wilkinson*, 926 F.2d at 28 (suggesting, but not holding, same); *cf. Unger*, 915 F.2d at 761 (same, in Sentencing Guideline context); U.S.S.G. § 4A1.2, comment. (n.6).

This fairly simple, widely adopted, burden of proof rule may not solve every problem. It may become necessary to decide, for example, what kinds of constitutional infirmity make a past conviction unusable in the sentencing context, when a constitutional error is harmless, when a defendant has waived a constitutional objection, and when (or to what extent) a federal sentencing court must accept some other court's determination of these matters. In answering such questions, the habeas analogy may again prove helpful, for similar issues arise in federal habeas corpus proceedings. It may well be the case (although we need not, and do not, now hold) that (with the exception of exhaustion requirements) the answers courts have found satisfactory in the habeas context will also prove satisfactory in this one.

In any event, we join the circuits that have held that a defendant may challenge, in a federal sentencing proceeding, the constitutionality of past convictions, offered to increase the length of a present sentence. We also hold that the burden of proof rules that we have previously suggested, *Wilkinson*, 926 F.2d at 28; *Unger*, 915 F.2d at 761, apply in such proceedings.

## C

### *Subsidiary Arguments*

The government argues that, even if we hold that Paleo can challenge his prior convictions, we must still vacate the district court's sentence, for Paleo failed to demonstrate that his prior convictions were constitutionally invalid. Paleo challenged his first and second "breaking and entering" convictions by filing his own affidavit, stating that the Boston Municipal Court, in both instances, failed to conduct a constitutionally adequate colloquy, informing him of his constitutional rights, before he entered pleas of guilty. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The government points out, however, that state court records of the convictions include stamped entries that say "*found* guilty." The government adds (supported by an affidavit, from the munic-

ipal court clerk, not available to the district court) that this stamp means Paleo did not plead guilty; thus, there were no colloquies.

Paleo challenged his third "breaking and entering" conviction by filing affidavits that said that, when he returned to the state district court seeking a new sentence (apparently he was dissatisfied with his first sentence), he was not represented by counsel, and the district court did not tell him about his right to a retrial by jury. The affidavit, however, does not deny that the court told him about his right to a jury trial at the crucial stage in the proceedings—before he pled guilty and before he was initially sentenced—when, he concedes, he was represented by counsel. In fact, the court records include the stamp "Defendant files waiver of right to trial by jury."

The government's arguments cast considerable doubt on the district court's findings of unconstitutionality. Given the uncertainties in the record and the absence of previous instruction from this court, we vacate the sentence and remand the case for a new sentencing hearing.

*So ordered.*

## MEMORANDUM AND ORDER

Entered: August 18, 1992

■ The Government, in its rehearing petition, repeatedly describes our decision as finding some sort of constitutional right to attack collaterally a prior conviction at sentencing (whether or not the defendant has exhausted all other avenues for challenging the conviction). From this, the Government goes on to argue that other circuit courts must disagree with our "constitutional" holding because they have concluded that no such right is available under the Sentencing Guidelines.

Our decision, however, does not refer to the Constitution in the way the Government suggests. Rather, it refers to a statute, 18 U.S.C. § 924(e), a statute that adds punishment in light of an offender's prior "convictions." We interpret this statute to mean that the "convictions" to which Congress referred are "constitutionally valid" convictions, not unconstitutional convictions. And, for the reasons stated in the opinion, we found nothing in the statute that bars an offender from arguing to the sentencing court that something that purports to be a constitutionally valid prior conviction is, in fact, *not* a constitutionally valid prior conviction, and therefore is not the kind of "conviction" upon which the statute premises additional punishment. Our conclusion is in accord with cases from other circuits considering this same statute, while the supposedly contrary Sentencing Guidelines cases the Government cites interpret a broadly analagous provision, but one that arises in a different legal context and uses language critically different from that of the statute here in question. *Compare* U.S.S.G. § 4A1.2, comment. (n. 6) (1990) ("convictions that a defendant shows to have been *previously ruled* constitutionally invalid are not to be counted" in criminal history calculation) (emphasis added) *and* 18 U.S.C. § 924(e)(1) (mandatory minimum sentence for "person who ... has three previous convictions").

The petition for rehearing is *Denied.*