March 9, 1993

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1969

UNITED STATES OF AMERICA,

Appellee,

v.

RICHARD HARMON BELL,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin, Senior Circuit Judge,

and Boudin, Circuit Judge.

Sarah Jennings Hunt for appellant.

F. Mark Terison, Assistant United States Attorney, with whom

Richard S. Cohen, United States Attorney, was on brief, for the

United States.

March 9, 1993

SELYA, Circuit Judge. This appeal asks, essentially, a
SELYA, Circuit Judge.

single question: Must a district court, at a reconvened

sentencing hearing following a defendant's successful appeal,

reexamine its explicit findings and conclusions on an issue not

raised in the appeal and which the defendant had previously

acknowledged to be correctly decided? Because we do not believe

that the district court is under so wide-ranging an obligation,

we affirm the judgment below.

I.

Prior Proceedings

Defendant-appellant Richard Harmon Bell pleaded guilty

to an indictment detailing six prior felony convictions and

charging him with receipt and possession of a firearm by a

convicted felon in violation of 18 U.S.C. 922(g)(1) (1988).

Believing that Bell met all three criteria for career offender

status,1 see, e.g., United States v. Fiore, F.2d ,

(1st Cir. 1992) [No. 92-1601, slip op. at 2] (enumerating

criteria), the presentence investigation report (PSI Report)

recommended imposition of sentence under U.S.S.G. 4B1.1 (Nov.

1991). While acknowledging that he had committed the gaggle of

crimes attributed to him in the PSI Report, Bell nonetheless

objected to the sentencing recommendation on the ground that the

crime of conviction was not a crime of violence.

1Bell was more than eighteen years old at the time he
perpetrated the offense of conviction; that offense was a crime
of violence; and his record contained six prior convictions for
violent felonies.

2

At the sentencing hearing, Bell renewed this argument.

Withal, his counsel declared no fewer than three times, and Bell

himself stated at least twice, that even if Bell's argument

prevailed, he would be subject to a mandatory minimum sentence of

15 years as his prior convictions were sufficient to place him

within the purview of the Armed Career Criminal Act (ACCA), 18

U.S.C. 924(e)(1) (1988) (stipulating that a defendant is

considered an armed career criminal if he has three prior

convictions for violent felonies and if the offense of conviction

is possession of a firearm which has traveled across state

lines). In the course of the sentencing proceedings, the

district court found that Bell had been convicted previously of a

half-dozen violent crimes listed in the PSI Report, including

assault and battery with a dangerous weapon, kidnapping, and

various episodes of robbery. The defendant lodged no objection

to this finding; to the exact contrary, statements made by both

Bell and his counsel patefied its accuracy. Nevertheless, the

court concluded that the offense of conviction was itself a crime

of violence as defined in U.S.S.G. 4B1.1 and sentenced Bell to

a prison term in excess of 30 years as a career offender rather

than to a shorter period of incarceration as an armed career

criminal.

Bell appealed the sentence. On appeal, his counsel

vigorously disputed whether a felon-in-possession conviction

could lawfully trigger the career offender guideline. Counsel

conceded, however, that "based upon [Bell's] prior record, he is

3

subject to an enhancement . . . of 15 years to life under the

Armed Career Criminal [Act]." We bought counsel's wares, holding

"that, where the offense of conviction is the offense of being a

convicted felon in knowing possession of a firearm, the

conviction is not for a `crime of violence' and that, therefore,

the career offender provision of the federal sentencing

guidelines does not apply." United States v. Bell, 966 F.2d 703,

703 (1st Cir. 1992). Hence, we vacated Bell's sentence and

remanded for resentencing in light of our opinion. See id. at

707.

At the resumed sentencing hearing, Bell for the first

time sought to challenge the validity of his prior convictions

and, through that medium, his ACCA status. The district court

ruled that the objection was untimely. It sentenced Bell as an

armed career criminal. This appeal ensued.

II.

Discussion

Bell strives gallantly to persuade us that the district

court was obliged to entertain his belated challenge to some or

all of the six predicate convictions; or, in the alternative,

that the court abused its discretion in refusing to do so. We

find both parts of this asseverational array unconvincing.

A.

The first of appellant's contentions is easily

dispelled. An appellate court's disposition of an appeal must be

read against the backdrop of prior proceedings in the case. See

4

United States v. Cornelius, 968 F.2d 703, 706 (8th Cir. 1992)

(explaining that a remand does not automatically rejuvenate the

entire case); United States v. DeJesus, 752 F.2d 640, 643 (1st

Cir. 1985) (per curiam) (similar); see also Kotler v. American

Tobacco Co., 981 F.2d 7, 13-14 (1st Cir. 1992) (outlining rules

governing appellate court's power to reconsider an issue on

remand from the Supreme Court). It follows, then, that in

determining whether a trial court is duty bound to rethink an

issue foregone in an earlier appeal, the court "must implement

both the letter and spirit of the [previous] mandate, taking into

account the appellate court's opinion and the circumstances it

embraces." United States v. Kikumura, 947 F.2d 72, 76 (3d Cir.

1991) (citation and internal quotation marks omitted). We apply

these tested tenets in the instant case.

Here, our mandate disposing of Bell's original appeal

directed the district court to conduct resentencing "in

accordance with the opinion issued" in that appeal. The context

of that order was the opinion itself an opinion which

discussed, in some detail, see Bell, 966 F.2d at 704-07, the

single issue that appellant chose to proffer. The opinion relied

on Bell's eschewal of any other challenge and virtually

foreclosed the argument he now belatedly advances. We wrote

that, if the district court had not erroneously "sentenced [Bell]

as a career offender under section 4B1.1, the guideline

sentencing range apparently would have been much lower and he

would, in all probability, have been sentenced to 15 years in

5

prison (the mandatory minimum sentence under the statute of

conviction)." Id. at 704. It is readily evident, therefore,

that neither the letter nor the spirit of our mandate is

consistent with the turnaround that Bell proposes today:

starting the sentencing pavane from scratch following remand.

Rather than obligating the district court to examine the validity

of Bell's previous convictions, our mandate, read in the most

plausible manner, constrained the district court from considering

on remand a collateral challenge that defendant had, from all

appearances, deliberately bypassed.

The black letter rule governing this point is that a

legal decision made at one stage of a civil or criminal case,

unchallenged in a subsequent appeal despite the existence of

ample opportunity to do so, becomes the law of the case for

future stages of the same litigation, and the aggrieved party is

deemed to have forfeited any right to challenge that particular

decision at a subsequent date. See Williamsburg Wax Museum, Inc.

v. Historic Figures, Inc., 810 F.2d 243, 250 (D.C. Cir. 1987);

see also United States v. Duchi, 944 F.2d 391, 393 (8th Cir.

1991) (standing for the proposition that arguments in the

alternative, like other challenges, must be brought before an

appellate court lest an ensuing ruling become the law of the

case). Abandoning this prudential principle would threaten the

important policy considerations underlying the law of the case

doctrine, such as "stability in the decisionmaking process,

predictability of results, proper working relationships between

6

trial and appellate courts, and judicial economy." United States

v. Rivera-Martinez, 931 F.2d 148, 151 (1st Cir.), cert. denied,

112 S. Ct. 184 (1991).

B.

Even where, as here, an appellate court's mandate does

not contemplate resurrecting an issue on remand, the trial court

may still possess some limited discretion to reopen the issue in

very special situations. See id. at 150-52; Cochran v. M & M

Transp. Co., 110 F.2d 519, 521 (1st Cir. 1940). After all, the

so-called "mandate rule," generally requiring conformity with the

commands of a superior court on remand, is simply a specific

application of the law of the case doctrine and, as such, is a

discretion-guiding rule subject to an occasional exception in the

interests of justice. See, e.g., Johnson v. Uncle Ben's, Inc.,

965 F.2d 1363, 1370 (5th Cir. 1992), petition for cert. filed, 61

U.S.L.W. 3356 (U.S. Sept. 29, 1992) [No. 92-737]; Jones v. Lewis,

957 F.2d 260, 262 (6th Cir.), cert. denied, 113 S. Ct. 125

(1992); United States v. Miller, 822 F.2d 828, 832-33 (9th Cir.

1987); Piambino v. Bailey, 757 F.2d 1112, 1119-20 (11th Cir.

1985), cert. denied, 476 U.S. 1169 (1986); Continental Bank &

Trust Co. v. American Bonding Co., 630 F.2d 606, 608 (8th Cir.

1980); Cleveland v. FPC, 561 F.2d 344, 348 (D.C. Cir. 1977);

Banco Nacional de Cuba v. Farr, 383 F.2d 166, 178 (2d Cir. 1967),

cert. denied, 390 U.S. 956 (1968); see also Kotler, 981 F.2d at

13 (on remand, lower court ordinarily retains the "naked power to

reexamine" a closed issue, but should exercise such power

7

"sparingly and only when . . . necessary to avoid extreme

injustice"). In other words, because the law of the case

doctrine is a rule of policy and practice, rather than a

jurisdictional limitation, it may tolerate a "modicum of residual

flexibility" in exceptional circumstances. Rivera-Martinez, 931

F.2d at 151; see also Cochran, 110 F.2d at 521 (warning against

allowing the law of the case doctrine to become an instrument of

injustice). Assuming this to be the law,2 we turn to Bell's

fallback claim that the district court, in its discretion, should

have entertained his challenge to the myriad of predicate

offenses.

Here, reopening an already decided matter cannot be

justified. At a minimum, reopening would require a showing of

exceptional circumstances a threshold which, in turn, demands

that the proponent accomplish one of three things: show that

controlling legal authority has changed dramatically; proffer

significant new evidence, not earlier obtainable in the exercise

of due diligence; or convince the court that a blatant error in

the prior decision will, if uncorrected, result in a serious

injustice. See, e.g., Rivera-Martinez, 931 F.2d at 151

2The commentators have noted considerable uncertainty about
whether a district court is always obligated to conform the scope

of its inquiry on remand with the appellate court's mandate.
See, e.g., 18 C. Wright, et al., Federal Practice and Procedure

4478, at 793 & n.15 (1981 & Supp. 1992). We believe that the
weight of logic and authority pushes against so rigid a position,
but we need not decide the issue squarely; even assuming the
existence of residual discretion, we find no exceptional
circumstances that would warrant the court below in peering
behind our original mandate.

8

(collecting cases); United States v. Rosen, 929 F.2d 839, 842 n.5

(1st Cir.), cert. denied, 112 S. Ct. 77 (1991); DeJesus, 752 F.2d

at 642; see also Marin Piazza v. Aponte Roque, 909 F.2d 35, 38

(1st Cir. 1990). Bell met none of these benchmarks. The

relevant legal authority has not changed.3 The belated

challenge to the predicate offenses is, at best, conclusory and

self-serving; no hard evidence has been adduced from which it

could be concluded that four or more of Bell's predicate

convictions were infirm; and, moreover, no credible explanation

has been offered for Bell's failure to assert the challenge in a

more timely fashion. Finally, no manifest injustice looms. The

district court was not faced with an isolated instance of

inadvertent oversight on the part of a beleaguered defendant.

Bell was represented by able counsel throughout. He and his

lawyer confirmed the district court's findings and conclusion

time and again. He passed up numerous opportunities for mounting

the challenge he now wishes to press. Last, but far from least,

there is no real reason to believe that Bell is exempt from armed

career criminal status. In the circumstances of this case, we

simply cannot fault the district court for declining to reopen

the record.

3It is true that United States v. Paleo, 967 F.2d 7 (1st

Cir. 1992), a case dealing with a district court's discretion to
consider collateral attacks on prior convictions at sentencing,
postdated Bell's first appeal. As appellant concedes, however,
Paleo was no bolt from the blue. We had suggested on several

previous occasions that such challenges were permissible. See,

e.g., United States v. Patrone, 948 F.2d 813, 817 (1st Cir.

1991), cert. denied, 112 S. Ct. 2953 (1992); United States v.

Unger, 915 F.2d 759, 761-62 (1st Cir. 1990), cert. denied, 111 S.

Ct. 1005 (1991); see also Paleo, 967 F.2d at 11 (collecting

caselaw from five other circuits holding to like effect).

9

III. CONCLUSION

We need go no further. The law of the case doctrine

dictates that all litigation must sometime come to an end. See

Arizona v. California, 460 U.S. 605, 619 (1983). Here, appellant

has provided us with no valid reason to depart from this policy

and overturn the district court's refusal to resuscitate an issue

previously agreed upon and decided in the case.

Affirmed.

10