UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 92-2068

 UNITED STATES,
 Appellee,

 v.

 EDWARD ISAACS,
 Defendant, Appellant.
 

No. 92-2129

 UNITED STATES,
 Appellant,

 v.

 EDWARD ISAACS,
 Defendant, Appellee.
 

 APPEALS FROM THE UNITED STATES DISTRICT COURT
 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Rya W. Zobel, U.S. District Judge]
 
 

 Before
 Torruella, Circuit Judge,
 
 Oakes,* Senior Circuit Judge,
 
 and Cyr, Circuit Judge.
 

Miriam Conrad, Assistant Federal Defender, with whom Owen S.
 
Walker, Chief Federal Defender, was on brief for Edward Isaacs.
 
Fred M. Wyshak, Jr., Assistant U.S. Attorney, and Carole S.
 
Schwartz, Special Assistant U.S. Attorney, with whom A. John
 
Pappalardo, United States Attorney, was on brief for the United States
 
of America.
 
 January 25, 1994
 

 

*Of the Second Circuit, sitting by designation.

 OAKES, Senior Circuit Judge. This case consists
 

of cross appeals from a judgment of the United States

District Court for the District of Massachusetts, Rya W.

Zobel, Judge. The Government appeals both the decision of
 

the court to entertain a collateral challenge to the

constitutionality of a prior conviction at sentencing and

the decision of the court that the prior conviction was

constitutionally invalid. The defendant, Edward Isaacs,

appeals his conviction on the basis that the district court

improperly allowed into evidence an indictment against his

father and cousins and improperly allowed him to be cross-

examined concerning his knowledge of his relatives' alleged

loansharking enterprise. For the reasons below, we reverse

the district court's decision that it had the power to

review the constitutionality of Isaacs' prior conviction and

affirm its decision to admit the indictment against his

father into evidence and to allow him to be questioned about

the activities of his relatives.

 BACKGROUND
 

 Isaacs was convicted of one count of conspiracy

and one count of using extortionate means to attempt to

collect a loan, in violation of 18 U.S.C. 2 and 894(a)

(1988). According to the Government, racketeering and

loansharking was something of a family business. Isaacs got

involved in the "business" after his father, Leonard, was

 2

indicted, placed under house arrest, and developed health

problems. Isaacs' conviction is based on his dealings with

one of his father's alleged loansharking victims, Robert

Ayala. Ayala had borrowed $2,500 from Leonard in November

of 1990 and had been making weekly interest payments of $100

(for an interest rate of 208% per year). Isaacs contacted

Ayala in July of 1991, after Ayala had stopped making

payments, to pressure Ayala to pay off the entire loan.

Ayala eventually sought help from the authorities and agreed

to help record conversations with Isaacs. 

 Isaacs was tried before a jury and convicted. The

Government's evidence included several recordings of

conversations that supported the allegations of extortion.

In addition, there was proof that Isaacs broke into Ayala's

home and threatened Ayala with a pistol in front of his

three small children. At sentencing, the district court

increased Isaacs' offense level under the United States

Sentencing Guidelines (the "Sentencing Guidelines" or

"Guidelines" or "U.S.S.G") by two points for perjury and

intimidation of a witness and then refused Isaacs' request

for a downward departure based on his history of abuse at

the hands of his father. However, the court allowed Isaacs

 3

to challenge a 1980 burglary conviction1 that would have

resulted in his being classified as a career offender,

instead of receiving a Criminal History Category of III.

Isaacs argued that he had not received effective assistance

of counsel in his earlier case because his attorney did not

object to having the case transferred from juvenile to adult

court at a certification hearing. The district court found

that Isaacs had demonstrated by a preponderance of the

evidence that his prior conviction was unconstitutional and

refused to consider either the conviction or the underlying

conduct as a basis for changing Isaacs' Criminal History

Category. As a result, Isaacs faced 97 to 121 months

imprisonment rather than 210 to 262 months and was sentenced

to 108 months.

 DISCUSSION
 

 This case raises three issues. First, we consider

whether U.S.S.G. 4A1.2 gives a sentencing court discretion

to allow a defendant to challenge the constitutional

validity of a prior conviction that is being used to enhance

his or her Criminal History Category. Second, we address

the question whether Isaacs had a constitutional right to

 

1Isaacs was arrested in August of 1980 and charged with
several burglaries that occurred during June and July.
Isaacs was 17 at the time and was not living at home.

 4

challenge his prior conviction at sentencing. Finally, we

evaluate Isaacs' contention that the district court

committed reversible error in admitting evidence of his

relatives' alleged criminal behavior.

I. The Government's Appeal
 

 A. Section 4A1.2 of the Sentencing Guidelines
 

 The Government contends that the Sentencing

Guidelines do not provide a sentencing court independent

authority to permit a collateral challenge to the

constitutionality of a prior conviction where the prior

conviction is being used to compute a defendant's Criminal

History Category. We agree. The dispute over this issue

concerns Comment 6 to 4A1.2, and, in particular, a 1990

amendment to the Guidelines that altered Comment 6 and added

a background note to the comment section. 

 Prior to the 1990 amendment, Comment 6 to 4A1.2

of the Guidelines stated:

 Invalid Convictions. Sentences
 
 resulting from convictions that have
 been reversed or vacated because of
 errors of law, or because of
 subsequently-discovered evidence
 exonerating the defendant, are not to be
 counted. Any other sentence resulting
 in a valid conviction is to be counted
 in the criminal history score.
 Convictions which the defendant shows to
 
 have been constitutionally invalid may
 

 5

 not be counted in the criminal history
 
 score. Also, if to count an uncounseled
 
 misdemeanor conviction would result in
 the imposition of a sentence of
 imprisonment under circumstances that
 would violate the United States
 Constitution, then such conviction shall
 not be counted in the criminal history
 score. Nonetheless, any conviction that
 is not counted in the criminal history
 score may be considered pursuant to
 4A1.3 if it provides reliable evidence
 of past criminal activity. 

U.S.S.G. 4A1.2, comment (n.6) (Nov. 1, 1989) (second

emphasis added). The courts which interpreted this Comment

uniformly found that the Guidelines authorized or required

the constitutional review of prior convictions at

sentencing. See, e.g., United States v. Mims, 928 F.2d 310,
 

312 (9th Cir. 1991); United States v. Edwards, 911 F.2d
 

1031, 1035 (5th Cir. 1990); United States v. Jones, 907 F.2d
 

456, 460-69 (4th Cir. 1990), cert. denied, 498 U.S. 1029
 

(1991). 

 However, the Sentencing Commission amended the

comment section for 4A1.2 in 1990, thereby reopening the

question whether the Guidelines provide district courts with

independent authority to review the constitutionality of

prior convictions. Cf. Stinson v. United States, U.S.
 

 , 113 S. Ct. 1913 (1993) (Interpretive commentary in

Guidelines is binding authority for federal courts even when

contrary to prior judicial interpretation of Guidelines).

Comment 6 to 4A1.2 as thus amended provides:

 6

 Reversed, Vacated, or Invalidated
 
 Convictions. Sentences resulting from
 
 convictions that have been reversed or
 vacated because of errors of law, or
 because of subsequently-discovered
 evidence exonerating the defendant, are
 not to be counted. Also, sentences
 resulting from convictions that a
 defendant shows to have been previously
 
 ruled constitutionally invalid are not
 
 to be counted. Nonetheless, the
 criminal conduct underlying any
 conviction that is not counted in the
 criminal history score may be considered
 pursuant to 4A1.3 (Adequacy of Criminal
 History Category).

U.S.S.G. 4A1.2, comment (n.6) (Nov. 1, 1991) (second

emphasis added). In short, Comment 6 no longer deals with

collateral challenges at all, but simply instructs the

sentencing court to disregard convictions that have been

"previously ruled unconstitutional." Nevertheless, a

background note added to the comment section at the same

time states in pertinent part:

 The Commission leaves for court
 determination the issue of whether a
 defendant may collaterally attack at
 sentencing a prior conviction.

 The courts that have assessed the revised comment

section to 4A1.2 have accordingly divided on whether the

Guidelines continue to authorize the review of prior

convictions. Compare United States v. Byrd, 995 F.2d 536
 

(4th Cir. 1993) (Wilkins, J.) (Guidelines add no independent

power for collateral review; Constitution mandates review

only in certain limited circumstances), United States v.
 

 7

Roman, 989 F.2d 1117, 1120 (11th Cir. 1993) (en banc) (per
 

curiam) (Guidelines add no independent power for collateral

review; Constitution mandates review only if conviction

"presumptively void") and United States v. Hewitt, 942 F.2d
 

1270, 1276 (8th Cir. 1991) (amendment to Comment 6

demonstrates Commission's intent to disallow challenges to

prior convictions; no discussion of the added background

note) with United States v. McGlocklin, No. 91-6121, 1993
 

U.S. App. LEXIS 23841, at *16 n.7 (6th Cir. Sept. 17, 1993)

(Comment 6 is consistent with the inherent authority of

district courts to allow attacks on prior convictions),

United States v. Canales, 960 F.2d 1311, 1315 (5th Cir.
 

1992) (background note demonstrates that Commission intended

to allow sentencing court some discretion in whether to

allow challenges to prior convictions) and United States v.
 

Jakobetz, 955 F.2d 786, 805 (2d Cir.) ("[w]hile defendants
 

may always present the sentencing court with evidence that

another court has ruled their prior convictions invalid and

hence unsuitable for consideration as part of the criminal

history score at sentencing, the court also retains

discretion to determine whether a defendant may mount an

initial challenge to the validity of such convictions."),

cert. denied, U.S. , 113 S. Ct. 104 (1992); and cf.
 

United States v. Vea-Gonzales, 986 F.2d 321, 325-29 (9th
 

Cir. 1993) (Guidelines ambiguous on right of sentencing

 8

court to allow collateral attacks on prior convictions but

Constitution makes right of attack mandatory) amended and
 

superseded 999 F.2d 1326 (9th Cir. 1993).
 

 The First Circuit has not addressed this precise

question, although this court has decided that a defendant

may attack the constitutional validity of a state conviction

when facing the enhancement provisions of the Armed Career

Criminal Act ("ACCA"). United States v. Paleo, 967 F.2d 7,
 

11-12 (1st Cir. 1992). In response to a petition for

rehearing in Paleo, however, this court stated that the
 

language of Comment 6 to 4A1.2 was "critically different"

from the language of the ACCA. United States v. Paleo, No.
 

90-1774, 1992 WL 545126, at *2 (1st Cir. Sept. 18, 1992)

(memorandum and order denying petitions for rehearing).

Nonetheless, the Paleo panel did not directly address the
 

question whether a sentencing court has discretion under the

Guidelines to allow a collateral attack on a prior

conviction. 

 The Government asks this court to accept the Roman
 

and Hewitt courts' interpretation of 4A1.2 and find that
 

the revised Comment 6, the commentary applicable to this

case, is intended to preclude collateral review of prior

 9

convictions. We find this view persuasive.2 The 1990

amendment to Comment 6 removed the language that served to

authorize first time collateral review of prior convictions

and replaced it with language permitting review only of

convictions "previously ruled invalid." As the Eleventh

Circuit recognized in Roman, "[n]o language now in Note 6
 

authorizes collateral review." Roman, 989 F.2d 1117, 1119.
 

 The problem is, of course, more difficult by

virtue of the appended background note which leaves "for

court determination the issue of whether a defendant may

collaterally attack at sentencing a prior conviction." We

believe that this note does not provide an independent basis

for the review of prior convictions, given the revised

language of Comment 6 itself. Instead, the background note

may be best understood as a signal, somewhat faint to be

sure, that the Sentencing Commission had not attempted to

resolve whether the Constitution requires a sentencing court

to review the constitutionality of a prior conviction that

is being used to enhance a sentence -- an issue we address

below. As the Roman court stated, "[t]he Background Comment
 

 

2The Commission's explanation for the amendment states
unhelpfully that the amendment "clarifies the circumstances
under which prior sentences are excluded from the criminal
history score." U.S.S.G. App. C, Amendment 353, at 171.
The focus of the amendment explanation appears to be the
addition of uncounseled misdemeanor convictions to those
convictions that are used to determine the criminal history
score. Id.
 

 10

does not change [Comment 6's] meaning, but recognizes that -

- apart from the sentencing guidelines -- the Constitution

bars federal courts from using certain kinds of convictions

at sentencing." Id.3
 

 B. Constitutional Considerations
 

 Although the district court based its decision to

review the constitutionality of Isaacs' prior conviction on

the mistaken belief that the Guidelines authorized such a

review, we must still address Isaacs' contention that the

Constitution guarantees the right to challenge collaterally

prior convictions at sentencing. In opposition to Isaacs'

position, the Government advocates the position taken by the

Eleventh Circuit in Roman -- that the Constitution does not
 

require sentencing courts to permit defendants to make a

 

3A recent amendment to the comment section of 4A1.2
suggests that the Commission did not intend the Guidelines
to provide an independent basis for a sentencing court to
review the constitutionality of prior convictions. See
 
U.S.S.G. 4A1.2, comment (n.6) (Nov. 1, 1993). The
amendment directly confronts the "inter-circuit conflict in
interpreting the commentary by stating more clearly that the
Commission does not intend to enlarge a defendant's right to
attack collaterally a prior conviction at the current
sentencing proceeding beyond any right otherwise recognized
in law." Proposed Amendment 20 to the Sentencing
Guidelines, Policy Statements, and Official Commentary
(April 30, 1993). Despite this clear statement of intent,
we note that the amendment did not go into effect until
November 1, 1993. Thus, we do not rely on the amendment to
hold that the Guidelines do not provide independent
authority for collateral review of prior convictions.

 11

collateral challenge to prior convictions at sentencing

unless the alleged constitutional error is so grave as to

make the prior conviction "presumptively void." The

Government further contends that Isaacs' challenge to his

prior conviction does not meet the "presumptively void"

criteria.4 

 We begin by observing that the Supreme Court has

so far declined to consider whether due process requires

"state courts to permit challenges to guilty pleas used for

enhancement purposes." Parke v. Raley, 113 S. Ct. 517, 523
 

(1992) (due process clause permits state to impose burden of

production on recidivist defendant who challenges validity

of prior conviction under Boykin v. Alabama, 395 U.S. 238
 

(1969)). Nonetheless, both Isaacs and the Government

contend that guidance on this issue can be found in an

analysis of two Supreme Court cases handed down prior to the

implementation of the Sentencing Guidelines: United States
 

 

4The government also argues that the interests of comity and
judicial economy suggest that prior convictions should not
be reviewed at sentencing. These arguments do not hold as
much water as they might since they have been rejected
already by this court in Paleo. As the Paleo court
 
recognized, "`comity' considerations are absent (or less
weighty) . . . when a federal court refuses to rely on a
state conviction as a basis for imposing a federal sentence
for a federal crime." Paleo, 967 F.2d at 12. Similarly,
 
judicial economy is not a reason to preclude collateral
review because this concern can be dealt with by placing the
burden of proof on the defendant. Id. at 12-13. 
 

 12

v. Tucker, 404 U.S. 443 (1972), and Burgett v. Texas, 389
 

U.S. 109 (1967). 

 Tucker involved a collateral challenge under 28
 

U.S.C. 2255 to a sentence based in part on two previous

convictions later shown to have been obtained in violation

of Gideon v. Wainwright, 372 U.S. 335 (1963). It had been
 

"conclusively determined" in a collateral state court

proceeding that the prior convictions were "constitutionally

invalid." Tucker, 404 U.S. at 444-45. The Tucker Court
 

held that the case should be remanded to the district court

for reconsideration of the sentence imposed upon the

defendant because the sentence was "founded at least in part

upon misinformation of constitutional magnitude." Id. at
 

447. As the Tucker Court explained, "the real question here
 

is not whether the results of the . . . proceedings might

have been different if the respondent had had counsel, but

whether the sentence . . . might have been different if the

sentencing judge had known that . . . the respondent's

previous convictions had been unconstitutionally obtained."

Id. at 448. 
 

 The Tucker Court's holding does not provide a
 

basis for finding that a defendant has a right to challenge

prior convictions at sentencing for the first time. Tucker
 

addresses the situation where prior convictions that are

used to enhance a sentence have been found previously to be

 13

unconstitutional -- not the situation addressed here, where

the prior conviction has not previously been found

unconstitutional. Tucker thus does not aid us.
 

 Burgett, which also addressed a Gideon violation,
 

is more relevant. In the Burgett case, the defendant
 

challenged a sentence enhancement based on a prior

conviction that on its face appeared to be unconstitutional,

though there had been no prior determination that it was in

fact unconstitutional. The certified copy of the judgment

offered by the Government at trial to prove the conviction

in question stated that the defendant had been without

counsel. The Burgett Court held that it would be improper
 

to presume from a silent record that the defendant had

waived his right to counsel and that, therefore, the

judgment of conviction raised "a presumption that petitioner

was denied his right to counsel." Burgett, 389 U.S. at 114.
 

In language that foreshadows the decision in Tucker, the
 

Burgett Court went on to say that "[t]o permit a conviction
 

obtained in violation of Gideon v. Wainwright to be used
 

against a person either to support guilt or enhance

punishment for another offense . . . is to erode the

principle of that case." Id. at 115.
 

 We agree with the Eleventh Circuit's Roman
 

decision that the appropriate rule to be teased from Burgett
 

is that the Constitution requires a review of the

 14

constitutionality of prior convictions at sentencing only

where the prior conviction is "presumptively void."5 989

F.2d at 1120. The Roman court, however, was not required to
 

and did not reach the question of what kinds of convictions

are "presumptively void." We examine that additional

question to determine whether the district court was

required to review Isaacs' ineffective assistance of counsel

claim.

 The Government suggests that "presumptively void"

convictions may include a claim of lack of counsel but not

 

5In a thoughtful concurring opinion in Roman, Chief Judge
 
Tjoflat disagreed with the "presumptively void" test and
suggested instead that the sentencing court must entertain a
constitutional challenge to a prior conviction only if "(1)
the offender denies the conduct, and (2) the objection
undermines the presumption associated with the conviction."
989 F.2d at 1129.
 We do not adopt the two-part test recommended by
Chief Judge Tjoflat primarily because we do not think it
appropriate to require a defendant to deny the underlying
conduct of a prior conviction in order to challenge the use
of the conviction under 4A1.2. When confronted with a
similar argument, concerning a defendant unconstitutionally
convicted but allegedly guilty of the underlying conduct of
the conviction, the Tucker Court replied that "[i]t would be
 
. . . callous to assume, now that the constitutional
invalidity of the respondent's previous convictions is
clear, that the trial judge will upon reconsideration
`undoubtedly' impose the same sentence he imposed in 1953."
Tucker, 404 U.S. at 449 n.8. Citing Burgett, the Tucker
 
Court also expressed a concern that the use of an
unconstitutional conviction to enhance a sentence would
erode the violated constitutional principle. Id. at 449. 
 
 Moreover, the Sentencing Guidelines already
provide a sentencing court with the authority to impose a
sentence that reflects prior criminal conduct not taken into
account by valid prior convictions. See U.S.S.G. 4A1.3,
 
p.s. (Adequacy of Criminal History Category).

 15

ineffective assistance of counsel, citing United States v.
 

Custis, 988 F.2d 1355 (4th Cir. 1993). In Custis, the
 

Fourth Circuit found that the Gideon violations at issue in
 

Burgett and Tucker were "different in kind" from the
 

ineffective assistance of counsel claims, noting that lack

of counsel claims "will ordinarily lend themselves to facial

review from the state court documents offered by the

government to establish the conviction." Id. at 1360-61.
 

 Although we agree with the outcome the Government

recommends, we think it necessary to clarify the appropriate

test to determine whether a conviction is "presumptively

void." 

 As an initial matter, a prior conviction is

"presumptively void" if a constitutional violation can be

found on the face of the prior conviction, without further

factual investigation. Contrary to the Government's

position, the Burgett Court did not rest its decision on the
 

difference between lack of counsel claims and ineffective

assistance of counsel claims -- a distinction that generally

has not been meaningful since Powell v. Alabama, 287 U.S.
 

45, 57 (1932). See McMann v. Richardson, 397 U.S. 759, 771
 

n.14 (1970). Instead, we note that the Burgett decision was
 

based on a judgment facially showing lack of any counsel and

that most claims of inadequacy of counsel are unlikely to

meet its "presumptively void" test. Indeed, even as to lack

 16

of counsel, the Supreme Court in Parke noted that "[a]t the
 

time the prior conviction at issue in Burgett was entered,
 

state criminal defendants' federal constitutional right to

counsel had not yet been recognized, and so it was

reasonable to presume that the defendant had not waived a

right he did not possess." Parke, 113 S. Ct. at 524.
 

 Under limited circumstances, however, a conviction

may be "presumptively void" even if a constitutional

violation cannot be found on the face of the prior

conviction. The Supreme Court has recognized that some

constitutional violations are so serious as to undermine the

reliability of an entire criminal proceeding. Rose v.
 

Clark, 478 U.S. 570, 577-578 (1986) ("Without these basic
 

protections, a criminal trial cannot reliably serve its

function as a vehicle for determination of guilt or

innocence, and no criminal punishment may be regarded as

fundamentally fair."). Such violations, termed "structural

errors," are not subject to "harmless error" analysis.

Sullivan v. Louisiana, No. 92-5129, 61 U.S.L.W. 4518, 4519
 

(June 1, 1993) (erroneous jury instruction on reasonable

doubt); see also Arizona v. Fulminante, 111 S. Ct. 1246,
 

1265 (1991) (opinion of Rehnquist, C.J., for the Court)

(listing as examples of errors that are not subject to

harmless error analysis: total deprivation of the right to

counsel at trial; judicial bias; unlawful exclusion of

 17

members of the defendant's race from a grand jury;

deprivation of the right to self-representation at trial;

and deprivation of the right to a public trial). Where an

offender challenges the validity of a prior conviction on

"structural" grounds, therefore, a district court should

entertain the challenge whether or not the error appears on

the face of the prior conviction.6 

 We conclude that the district court should not

have entertained Isaacs' challenge to the prior conviction.

First, Isaacs' challenge required the district court in this

case to go beyond the evidence of conviction presented by

the Government and conduct a factual investigation. Second,

Isaacs did not challenge his prior conviction on structural

grounds. It is of course well settled that ineffective

assistance of counsel claims are subject to "harmless error"

review. Strickland v. Washington, 466 U.S. 668 (1984).
 

Absent facial invalidity or an allegation of a "structural

error," Isaacs' prior conviction is not "presumptively

 

6We note that this approach is consistent with the test
recently formulated by the Fourth Circuit. In Byrd, the
 
Fourth Circuit held that "district courts are obliged to
hear constitutional challenges to predicate state
convictions in federal sentencing proceedings only when
prejudice can be presumed from the alleged constitutional
violation, regardless of the facts of the particular case;
and when the right asserted is so fundamental that its
violation would undercut confidence in the guilt of the
defendant." Byrd, 995 F.2d at 540. 
 

 18

void." Hence, the district court should not have

entertained Isaacs' challenge.7

II. Isaacs' Appeal
 

 Isaacs appeals the district court's decision to

admit into evidence at trial an indictment brought against

his father and cousins regarding his father's loansharking

operation. In addition, Isaacs challenges the Government's

examination of witnesses that brought out evidence of

Isaacs' family's criminal activity.

 These arguments are unpersuasive. Although the

admitted evidence had the potential of prejudicing Isaacs on

the basis of the bad acts of others, the evidence was quite

relevant. See Fed. R. Evid. 403 (relevant evidence excluded
 

only if probative value is "substantially outweighed" by

danger of unfair prejudice). As the Government argues, the

indictment provides a context to the statements made by

Isaacs to Ayala, a motive for Isaacs' actions, and evidence

 

7We need not respond to the government's additional
contention that the district court erred in determining that
Isaacs' right to effective assistance of counsel was
violated at his 1980 certification hearing because we find
that the court should not have addressed the
constitutionality of the prior conviction. Nor, in these
circumstances, need we anticipate the applicability of a
variation of the "procedural default" test for obtaining
collateral review of a prior conviction. See, e.g., United
 
States v. Frady, 456 U.S. 152, 166 (1982) (affirming "the
 
well-settled principle that to obtain collateral relief a
prisoner must clear a significantly higher hurdle than would
exist on direct appeal").

 19

of the requisite intent. Moreover, the district judge

provided several warnings to the jury to limit the

potentially improper effect of the evidence. For example,

the trial judge charged the jury that "[t]here is no

evidence that anybody before you in that [Leonard Isaacs'

case] has been convicted. It serves as background to this

case to say that Mr. Leonard Isaacs was accused of these

events, together with some other people." 

 Likewise, the cross-examination of Isaacs

regarding his knowledge of his family's alleged criminal

activities did not improperly prejudice him. Isaacs

testified that his contact with Ayala was not extortionate

and that he did not conspire with his father to collect the

debt. The questions asked by the Government concerning

Isaacs' knowledge of his family's alleged loansharking

activity directly confronted this testimony and were

therefore proper.

 Finally, given the substantial evidence of guilt

provided by the tape recordings of conversations between

Isaacs and Ayala and the evidence provided by Ayala's nine-

year-old daughter, who testified that Isaacs used his own

gun in rebuttal to Isaacs' testimony that he was examining a

gun owned by Ayala, any error in this regard was harmless.

 CONCLUSION
 

 20

 Accordingly, the judgment of the district court is

reversed in part and affirmed in part. We remand for

resentencing consistent with this opinion.

 21

 TORRUELLA, Circuit Judge (Dissenting in part). I
 

agree with the majority's lucid treatment of the collateral

attack issue, and believe that it is an important addition

to our jurisprudence. Unfortunately, I cannot endorse the

entire opinion. The majority summarily dismisses

appellant's arguments concerning the alleged 404(b)

evidence. On close examination, however, the 82 page

indictment of appellant's father and other relatives, which

did not mention appellant, was unfairly prejudicial and

should have been excluded under Federal Rule of Evidence

403. Appellant deserves a new trial on the merits.

 I begin with a preliminary matter. While the

majority does not cite Rule 404(b), it uses the Rule's

language when it states that the "bad acts" could be used to

show "motive" and "intent." Furthermore, the parties argued

extensively under the Rule. While I assume, thus, that Rule

404(b) is a part of the opinion, it should not be.

 Rule 404(b) excludes the use of other crimes,

wrongs or acts in order to show a defendant's character and

action in conformity with it. Such evidence must be crimes,

wrongs or acts committed by the defendant or by the person
 

who is sought to be impeached. United States v. David, 940
 

F.2d 722, 736 (1st Cir. 1991) ("Objections based on Rule

404(b) may be raised only by the person whose 'other crimes,

wrongs, or acts' are attempted to be revealed"); United
 

 -19-
 19

States v. Gonz lez-S nchez, 825 F.2d 572, 583 (1st Cir.
 

1987) ("Rule 404(b) does not exclude evidence of prior

crimes of persons other than the defendant"). In the

present case the allegedly 404(b) evidence refers to

evidence introduced of other crimes, wrongs or acts by

persons other than appellant. It is thus inadmissible under
 

that rule. 

 The inapplicability of Rule 404(b)

notwithstanding, the prejudicial impact of the indictment

substantially outweighed any probative value. It tarnished

appellant merely because of his relationship with its

targets, and because of its sheer weight. The indictment

required over eighty pages and forty-nine counts to detail

the scope of the father's racketeering operation, which

involved eleven victims, hundreds of thousands of dollars,

extortionate collection schemes, and illegal debts. To be

sure, it was a formidable document describing a formidable

criminal scheme. However, it did not implicate appellant in

that scheme in any way. The danger that the jury would

associate appellant with the scheme was too great to justify

admission of the indictment. United States v. St. Michael's
 

Credit Union, 880 F.2d 579, 601-02 (1st Cir. 1989) (evidence
 

concerning prior bad acts of father was impermissibly

prejudicial when defendant was not implicated in them). In

 -20-
 20

short, I believe that the majority has discounted the real

danger of guilt by association in this case.

 The majority contends that the indictment was

relevant to show context, motive and intent. While I grant

that information concerning Mr. Isaacs disability bore at

least some relevance to show motive, I cannot fathom any

need to introduce the indictment itself to bring out this

point. The use of the indictment was unfairly inflammatory

when compared with whatever minimal probative impact it

might hold. It was an abuse of discretion for the district

court to admit the evidence.

 -21-
 21