USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-2223 UNITED STATES, Appellee, v. PATRICK TRACY, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. D. Brock Hornby, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Campbell, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ Margaret D. McGaughey, Assistant United States Attorney, with _______________________ whom Jay B. McCloskey, United States Attorney, and Nicholas M. Gess, ________________ _________________ Assistant United States Attorney, were on brief for appellee. David R. Beneman, with whom Levenson, Vickerson & Beneman was on ________________ ______________________________ brief for appellant. ____________________ September 28, 1994 ____________________ CAMPBELL, Senior Circuit Judge. Patrick W. Tracy, ____________________ defendant-appellant, was indicted in a single count as being a felon in possession of a firearm in violation of 18 U.S.C. 922(g)(1) (1988).1 Tracy pleaded not guilty and not guilty only by reason of insanity. Following a joint motion for a competency examination, a psychologist with the federal prison system diagnosed Tracy, a Vietnam veteran, as suffering from Post-Traumatic Stress Disorder.2 ____________________ 1. 18 U.S.C. 922(g)(1) states: (g) It shall be unlawful for any person (1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year[] to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. 2. Post-Traumatic Stress Disorder is an anxiety disorder whose "essential feature . . . is the development of characteristic symptoms following a psychologically distressing event that is outside the range of usual human experience. . . . [S]uch common experiences as simple bereavement, chronic illness, business losses, and marital conflict" will not trigger [Post- Traumatic Stress Disorder]; classic examples of events which will induce the syndrome include natural disasters, military combat, torture, and rape. . . . . . . The syndrome's symptoms include insomnia, exaggerated startle Nevertheless, he reported that Tracy was competent to stand trial. Tracy was tried by jury in the United States District Court for the District of Maine. The jury returned a guilty verdict. The district court, pursuant to 18 U.S.C. 924(e)(1) (1988), sentenced Tracy to 312 months imprisonment to be followed by five years of supervised release. Tracy appeals from both the conviction and the sentence. We affirm. I. I. The evidence at trial indicated the following. At approximately 2:00 p.m. on May 18, 1991, Patrick Tracy entered a Shaw's Supermarket in Saco, Maine, and forced store employees at gunpoint to fill a black, gym bag with money. Tracy then took the gun and the bag of money and left the store. A store employee, Mark Dubay, observed Tracy get into a small, blue station wagon parked no more than thirty feet from the store. Mr. Dubay read the license plate number, observed the direction in which the car headed, and called the police. ____________________ response, feelings of guilt, loss of appetite and of weight, avoidance of reminders of the traumatic event, fearfulness, and nightmares and flashbacks. Debra A. Abbott et al., Developments in Maryland Law, 1986- ____________________________________ 87, 47 Md. L. Rev. 861, 881 n.2 (1988) (citations omitted). __ -3- While on patrol in a cruiser, Sergeant Bradley Paul and Officer Louis McAuliffe of the Saco Police Department were informed by radio of the Shaw's Supermarket robbery. The dispatcher provided them with the getaway car's description, license plate number, and direction of travel. As the officers proceeded towards the scene, they observed heading towards them a two-tone blue 1984 Chevrolet, with Maine license registration 780 82X, that fit this description. The officers pursued at high speed. During the chase, Sergeant Paul saw Tracy extend his left arm out the window and throw a large black object over the roof of the car. Officer McAuliffe identified the object as a firearm, and, by radio communication, instructed another pursuing police officer, Michael Carrier, to retrieve the weapon. At the area identified by Officer McAuliffe, Carrier found the hand grip of the firearm, a Ruger long barrel .45 caliber revolver, implanted in a utility pole. The revolver's frame was located in the grass about eight feet to the right of the pole. In the meantime, Sergeant Paul and Officer McAuliffe continued their pursuit. Eventually, the Chevrolet came to a stop. Tracy exited the car and began to run. The police pursued on foot. After a short chase, Tracy stopped running. Sergeant Paul and Officer McAuliffe subdued Tracy, placed him under arrest, walked him back to their cruiser, -4- and read him his Miranda rights. A search of the Chevrolet _______ revealed an open, black, Reebok gym bag filled with cash on the right, front seat. A small, orange Shaw's Supermarket zipper bag was later discovered at the bottom of the gym bag. Robbery of the Shaw's Supermarket was not Tracy's first such transgression. The instant indictment listed seven prior convictions: (1) assault with a shotgun on July 6, 1977, (2) assault with intent to murder on December 18, 1980, (3) assault by means of a handgun on December 18, 1980, (4) assault by means of a handgun on December 18, 1980, (5) armed robbery on December 18, 1980, (6) carrying a firearm in a vehicle without a license on December 11, 1987, and (7) receiving a stolen firearm on December 11, 1987. Not included in the indictment were other prior convictions for assault and battery on a police officer on September 25, 1979, uttering a false prescription on September 24, 1984, and assault and battery on a police officer, also on September 24, 1984. At trial, Tracy testified at length about his experiences in the military and as an infantry soldier in Vietnam. He also described his life after he was honorably discharged from the military in November 1970. Tracy told the jury that, after his discharge, he did not have a steady job, and, with a few exceptions, had difficulty relating to people. He felt increasingly nervous and fearful of crowds. -5- He started to experience severe headaches, and began drinking heavily and taking drugs. Memories of disturbing events in Vietnam made him feel depressed and angry. He had difficulty sleeping, and suffered from nightmares involving his war experiences. He twice attempted suicide,and was in and out ofVA Hospitals. Tracy also testified that he has suffered from hallucinations. In or about 1973, he was sitting at his parents' kitchen window when he noticed outside four people, whom he knew to be dead, walking towards the house. Tracy described that, on another occasion, in April 1991, he was walking down the street when he noticed two people, who were not really there, on either side of him. They were dressed in Vietnam jungle fatigues. Tracy felt one of them pat him on the back, and heard the other say, "Now we're home, Pat." According to Tracy, one man was black, the other white. This hallucination lasted approximately twenty seconds. Tracy told the jury that the weeks leading up to the robbery were particularly difficult for him. He testified to experiencing "horrible dreams" of war, bloodshed, and his dead friends. Some of his dreams depicted events that actually happened, and some were recurring. Tracy said that he was being "driv[en] over the edge" by all the celebrating and publicity surrounding the end of the Persian Gulf War. He was particularly disturbed by the -6- yellow ribbons people were hanging to welcome the returning soldiers. Tracy testified that, during the days leading up to the robbery of the Shaw's Supermarket, May 15-17, 1991, he was staying in a motel in Maine contemplating suicide. Towards this end, he purchased the gun used in the robbery. Tracy testified that, while taking a walk on the morning of May 18, 1991, the day of the Shaw's robbery, he saw a man in front of a Shop 'n Save selling poppies for Memorial Day. The store front was adorned with yellow ribbons. This sight, said Tracy, made him feel "horrible." Tracy walked back to the motel where he was staying. Then, according to Tracy, a thought came to him to "rob something," distribute the money to the families of his friends who were killed in Vietnam, and then kill himself at the Vietnam Veterans Memorial in Washington, D.C. Thereafter, Tracy took a walk, stole a car, went back to the motel, left the motel again, and robbed the Shaw's Supermarket. As to what he was thinking when he robbed the store, Tracy's last statement on direct examination was: With everything that had been caving in on me, thoughts [about] Vietnam, this, that, and the other thing, all the things to do with it, friends of mine and stuff like that, my feelings towards it and stuff like that, I thought it was the right thing to do. -7- Tracy called three witnesses Wally Rogers, Dr. John Meserve, and Dr. Terrence Keane who all testified that Tracy suffers from Post-Traumatic Stress Disorder. Dr. Keane and Mr. Rogers characterized it as severe and chronic. In rebuttal, the Government called Dr. Michael Morrison, a clinical psychologist with the Federal Bureau of Prisons at the Federal Correctional Facility in Petersburg, Virginia. He testified that, while he examined Tracy between March 5, 1992, and April 9, 1992, in order to determine if he was competent to stand trial, he did all that was necessary to assess Tracy's legal sanity. Dr. Morrison confirmed that Tracy suffers from Post-Traumatic Stress Disorder, as well as alcohol and substance abuse. He testified that a person suffering from Post-Traumatic Stress Disorder could lose touch with reality at a given point in time if he were to experience a flashback, which Dr. Morrison described as "an intense memory or reliving of [a] traumatic event." According to Dr. Morrison, Tracy's actions on May 18, 1991, as described in the police report, did not indicate that Tracy was experiencing a Post-Traumatic Stress Disorder flashback because there were no actions or statements to suggest that Tracy thought that he was involved in combat at that time. Dr. Morrison's assessment of Tracy was supported by Dr. Elizabeth Knutson, Acting Chief of Psychology at the -8- Metropolitan Correctional Center in New York. Dr. Knutson agreed that Tracy suffers from Post-Traumatic Stress Disorder, and, like Dr. Morrison, she found no indication that Tracy was experiencing a flashback when he robbed the Shaw's Supermarket. To the contrary, in her opinion, Tracy was cool, calm, and goal-directed during the course of the robbery. II. II. Tracy makes four arguments on appeal, namely, that the district court erred in (1) allowing the Government to introduce evidence of his prior criminal record that went beyond the parties' stipulation that Tracy was a convicted felon, (2) instructing the jury on the meaning of the term "knowingly," (3) failing to instruct the jury on the consequences of a verdict of not guilty only by reason of insanity, and (4) sentencing him as an armed career criminal under 18 U.S.C. 924(e)(1). We address these contentions. A. A. A felon-in-possession prosecution under 18 U.S.C. 922(g)(1) requires the Government to prove three elements: (1) that the defendant knowingly possessed a firearm; (2) that, at the time of the possession, the defendant had "been convicted in any court of a crime punishable by imprisonment for a term exceeding one year," 18 U.S.C. 922(g)(1); and (3) that such possession was in or affecting interstate or -9- foreign commerce. At trial, the parties stipulated "that[,] on or about May 18, 1991, [the date of the crime,] Patrick W. Tracy . . . had been previously convicted of a felony offense."3 Notwithstanding, the district court permitted the Government to elicit during its cross-examination of Tracy testimony that he was convicted (1) on September 24, 1984, of uttering a false prescription, (2) on December 18, 1980, of armed assault with intent to rob the Regan Pharmacy, and (3) on December 11, 1987, of buying or receiving a stolen firearm or carrying a firearm in a vehicle. Tracy contends that, in light of the stipulation, the district court committed reversible error in allowing the Government to delve into his prior convictions because such evidence was inadmissible under Fed. R. Evid. 404(b). The Government ____________________ 3. The stipulation was intended to satisfy the second element of the Government's case against Tracy. While it might not be apparent to a jury that conviction of a felony meant conviction "in any court of a crime punishable by imprisonment for a term exceeding one year," 18 U.S.C. 922(g)(1), any confusion was remedied by the district court's instruction to the jury making the necessary connection: Second, that before Patrick Tracy possessed the firearm, he had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year. That is, a felony __________________ offense. There is no dispute on this _______ issue. (emphasis added). Notwithstanding the district court's instruction, it would have been preferable had the parties stipulated in the statutory language, i.e., "convicted in any ____ court of a crime punishable by imprisonment for a term exceeding one year." -10- argues in response that evidence of Tracy's prior convictions was properly introduced to impeach Tracy's credibility pursuant to Fed. R. Evid. 609. We agree with the Government. In United States v. Tavares, 21 F.3d 1 (1st Cir. ______________ _______ 1994) (en banc), we recently held that "evidence beyond the fact of the prior conviction is inadmissible absent adequate trial court findings that its noncumulative relevance is sufficiently compelling to survive the balancing test of Fed. R. Evid. 403." Id. at 5. Hence, given the stipulation and ___ the district court's instruction, it would have been error here to have admitted evidence of the prior convictions in order to prove that Tracy had been convicted of a crime punishable by imprisonment for over one year. But we also stated in Tavares "that in some cases evidence concerning the _______ _______________________ nature of the prior conviction will be admissible for _____________________________________________________________ impeachment or other reasons, despite its lack of probative ___________ value on the prior conviction element of the crime." Id. at ___ 6 (emphasis added). In this context, while Fed. R. Evid. 404(b) states, inter alia, that "[e]vidence of other crimes, __________ wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," Rule 609 allows that, under certain circumstances and in appropriate cases, "[d]efendants who choose to become witnesses on their own behalf become subject to impeachment -11- by evidence of prior crimes," 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence 404[04], at 404-31 (1993). ____________________ This is so notwithstanding the Advisory Committee's awareness "that, in virtually every case in which prior convictions are used to impeach the testifying defendant, the defendant faces a unique risk of prejudice i.e., the danger that convictions ____ that would be excluded under Fed. R. Evid. 404 will be misused by a jury as propensity evidence despite their introduction solely for impeachment purposes." Fed. R. Evid. 609 advisory committee's note, 1990 amendment. Here Tracy took the stand, and evidence of his prior convictions was admissible if it satisfied the requirements of Fed. R. Evid. 609, which states in relevant part: (a) General rule. For the purpose of (a) General rule. attacking the credibility of a witness, (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs it prejudicial effect to the accused; and (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty -12- or false statement, regardless of the punishment. The Government insists that under Fed. R. Evid. 609(a)(2) the district court had no discretion to exclude the evidence of Tracy's conviction for uttering a false prescription, as this was a crime of dishonesty offered to impeach Tracy's credibility as a witness. The Government is correct. A conviction for uttering a false prescription plainly involves dishonesty or false statement. See Fed. R. Evid. 609 notes ___ of conference committee, H.R. No. 93-1597 ("By the phrase `dishonesty and false statement' the Conference means crimes such as perjury or subornation or perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully."). Moreover, "[t]he admission of prior convictions involving dishonesty and false statement is not within the discretion of the [district] [c]ourt." Id.; e.g., ___ ____ United States v. Morrow, 977 F.2d 222, 228 (6th Cir. 1992) ______________ ______ ("Rule 609(a)(2) . . . clearly limits the discretion of the court by mandating the admission of crimes involving dishonesty or false statements."), cert. denied, 113 S. Ct. ____________ 2969, 125 L. Ed. 2d 668 (1993); United States v. Kiendra, 663 _____________ _______ F.2d 349, 354 (1st Cir. 1981) ("[E]vidence offered under Rule 609(a)(2) is not subject to the general balancing provision -13- of Rule 403."). Hence, we find no error in the admission of evidence of the prior conviction for uttering a false prescription. Likewise, the Government insists that it was proper to cross-examine Tracy about his armed assault and stolen firearms convictions pursuant to Fed. R. Evid 609(a)(1). Under this Rule, evidence that the accused has been convicted of a crime will be admitted if (1) "the crime was punishable by death or imprisonment in excess of one year under the law under which the [accused] was convicted," Fed. R. Evid. 609(a)(1), (2) the prior conviction satisfies the time limit requirements of Fed. R. Evid. 609(b), and (3) "the [district] court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused," Fed. R. Evid. 609(a)(1). The parties agree that the first two of these requirements have been met. They disagree, however, about whether the district court properly balanced the probative value of the evidence of Tracy's prior convictions against its prejudicial effect. According to the Government, evidence of Tracy's prior convictions was necessary to discredit his testimony on direct examination to the effect that he could not appreciate the nature and quality or wrongfulness of his acts. Specifically, the Government points to the following colloquy that took place during Tracy's direct examination: -14- Q. Now I assume that you were aware that you can't rob supermarkets generally; correct? A. Yes. Q. On this day, when this incident you just described occurred, what were you thinking about this? A. I was thinking that it was the right thing to do. Q. Why? A. With everything that had been caving in on me, thoughts [about] Vietnam, this, that, and the other thing, all the things to do with it, friends of mine and stuff like that, my feelings towards it and stuff like that, I thought it was the right thing to do. The Government says that evidence of Tracy's prior convictions, elicited on cross-examination, discredited this testimony by revealing that Tracy has been told repeatedly by the judicial system that conduct akin to that engaged in on May 18, 1991, is not "the right thing to do." Tracy, on the ___ other hand, argues that evidence of his prior convictions was not probative as to his lack of credibility because he never testified that he could not appreciate the nature and quality or wrongfulness of the conduct for which he was charged, that is, illegally possessing a gun. We review a district court's probative value/prejudicial effect decision under Fed. R. Evid. 609(a)(1) for abuse of discretion. United States v. ______________ -15- Mehrmanesh, 689 F.2d 822, 834 (9th Cir. 1982); see United __________ ___ ______ States v. Lipscomb, 702 F.2d 1049, 1068 n.69 (D.C. Cir. 1983) ______ ________ (citing cases). Here, the district court initially heard the parties' arguments before Tracy testified. The prosecuting attorney maintained that this "is a case about whether or not [Tracy] appreciated the wrongfulness of his acts. And in my view, the assertion that he states that he is that he did not appreciate the wrongfulness of his acts falls apart when a Judge has told him on seven occasions that I would offer excuse me, eight occasions, that it was wrong." Counsel for Tracy responded that the evidence of Tracy's prior convictions was being offered only to prove Tracy's character in order to show that he acted in conformity therewith. In light of these arguments, the district court preliminarily ruled: My tentative ruling is that if the defendant does not testify as to wrongfulness or nature and quality of his conduct, that I would probably not permit impeachment by evidence of these other felonies, but to let the government reiterate that the defendant is indeed a convicted felon. And the reason for that is that if the testimony of the defendant does not go to that issue of whether he appreciated the nature and quality of the wrongfulness of his conduct on May the 18th, 1991, then the probative value of these previous felony convictions is quite limited, and their prejudicial effect is quite severe because they can of course suggest to the jury that the defendant is a dangerous person and provide risks of conviction on that score -16- alone as opposed to looking at the law and the facts in this case. On the other hand, if the defendant's testimony does go to the issue of whether on that date he appreciated the nature and quality or the wrongfulness of his conduct, then it seems to me that it would be appropriate and necessary to let in at least some of the convictions to show that, indeed, the defendant had been told on previous occasions that certain kinds of conduct were wrongful or that the nature and quality of certain kinds of conduct were subject to punishment. After Tracy testified on direct, but before cross- examination, the Government asked the district court to make its final ruling as to the admissibility of Tracy's prior convictions. The district court decided: The defendant has in fact testified about wrongfulness, rightfulness of the conduct, and the question of whether he was aware of the quality, nature and quality of his acts[.] [T]hat testimony has come out, so I will affirm the original ruling . . . . In explaining this decision, the district court said: The issue of credibility under [Rule] 609 is with respect to [the] offense being made[.] I have to weigh the probative value versus the prejudice that's involved, and the testimony here in terms of his understanding as to what is wrongful, what is right, and his testimony concerning his void and so on in his mind[.] I think there is probative value here that would outweigh the prejudice . . . . To mitigate any prejudice to Tracy, the district court instructed the jury: "You've heard testimony in this case -17- about prior criminal convictions. You may consider such testimony about prior criminal convictions only in assessing the credibility of the person who was convicted." We are unable to say the district court abused its discretion in the balance it struck between the probative value of the evidence and its prejudicial effect. Tracy pleaded not guilty only by reason of insanity. A central issue, therefore, was whether Tracy could understand the nature and quality or wrongfulness of his conduct. Before Tracy took the stand, the district court cautioned him that, if he testified that he could not appreciate the wrongfulness of his conduct on May 18, 1991, it would allow the Government to impeach his testimony by introducing evidence of three prior convictions to show that Tracy had reason to know that his conduct was improper. Disregarding this admonition, Tracy testified that he thought that robbing the Shaw's Supermarket on May 18, 1991, was the "right thing to do."4 In these circumstances, the district court's decision to allow evidence of Tracy's prior convictions for impeachment purposes was not error. B. B. ____________________ 4. Notwithstanding Tracy's suggestion to the contrary, we think that the district court could reasonably have inferred from this testimony that Tracy was saying that he thought it was acceptable for him to possess a gun when he robbed the Shaw's Supermarket. -18- Tracy contends that the district court erroneously defined the term "knowingly." The district court instructed the jury: First, [you must find] that Patrick Tracy knowingly possessed a firearm as charged. There is no dispute that the object in question is a firearm, but the parties do dispute whether Patrick Tracy knowingly possessed it. *** The word "knowingly" means that the act was done voluntarily and intentionally. Following this charge, Tracy objected and asked "the [district] court [to] define `knowingly' as meaning deliberately, intentionally and fully aware of what he was doing."5 The district court declined, explaining that such an instruction would have confused the jury by blurring the distinction between the Government's case and Tracy's insanity defense, which required him to prove that he could not understand the nature and quality or wrongfulness of his conduct. Tracy argues that the district court's refusal to give his requested instruction amounted to reversible error because the jury was not informed that the Government had to prove that he was fully aware of what he was doing on May 18, 1991. According to Tracy, his entire defense was premised on ____________________ 5. Tracy asserts that he requested this same instruction before trial and during the pre-charge conference. -19- the theory that, because of his Post-Traumatic Stress Disorder, he was not fully aware of what he was doing when he used a gun to rob the Shaw's Supermarket. The Government responds that Tracy was not entitled to have his requested instruction delivered verbatim, and the district court's instruction was a reasonable explanation of the term "knowingly." We find the Government's argument persuasive. The parties have not called to our attention any First Circuit decisions discussing the meaning of the term "knowingly."6 Published opinions and pattern jury instructions from other circuits, however, provide guidance. To be sure, some circuits have embraced a jury instruction stating that "knowingly means that a defendant realized what he was doing and was aware of the nature of his conduct." United States v. Lawson, 780 F.2d 535, 542 (6th Cir. 1985); _____________ ______ e.g., Federal Criminal Jury Instructions of the Seventh ____ Circuit, Instruction No. 6.04, pp. 86-87 (1980) ("When the word `knowingly' is used in these instructions, it means that the defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake or accident . . . ."); Manual of Model Criminal Jury ____________________ 6. Tracy does cite United States v. Couming, 445 F.2d 555, _____________ _______ 556-57 (1st Cir.), cert. denied, 404 U.S. 949, 92 S. Ct. 291, ____________ 30 L. Ed. 2d 266 (1971), as authority for his proffered instruction. We agree with the finding below, however, that, while it is true that the district court in Couming defined _______ "knowingly" as Tracy seeks to have it defined here, the court of appeals did not review the propriety of that definition. -20- Instructions for the Ninth Circuit, Instruction No. 5.06 (1992) ("An act is done knowingly if the defendant is aware of the act and does not act [or fail to act] through ignorance, mistake, or accident . . . ."); see also Model ___ ____ Penal Code 2.02(2)(b)(i) ("A person acts knowingly with respect to a material element of an offense when: (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist . . . ."); 1 Edward J. Devitt et al., Federal Jury Practice and Instructions _________________________________________ 17.04, at 626 (4th ed. 1992) ("The term `knowingly,' as used in these instructions to describe the alleged state of mind of the defendant, means that [he] [she] was conscious and aware of [his] [her] [action] [omission], realized what [he] [she] was doing or what was happening around [him] [her], and did not [act] [fail to act] because of ignorance, mistake, or accident."). Other circuits and commentators, however, have endorsed a definition of the term "knowingly" that largely coincides with the instruction given by the district court here. E.g., Pattern Jury Instructions of the District Judges ____ Association of the Fifth Circuit, Criminal Cases, Instruction No. 1.35 (1990) ("The word `knowingly,' as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally, not because of -21- mistake or accident."); Pattern Jury Instructions of the District Judges Association of the Eleventh Circuit, Criminal Cases, Basic Instruction No. 9.2 (1985) ("The word `knowingly,' as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally and not because of mistake or accident."); 1A Leonard B. Sand et al., Modern Federal Jury Instructions ________________________________ 35-28 (1993) ("An act is done knowingly if you find that the defendant acted purposely and voluntarily, and not by mistake or accident.") (citing cases). We think the district court's definition of "knowingly," which is commonly accepted, was appropriate here. See United States v. Noone, 913 F.2d 20, 30 (1st Cir. ___ _____________ _____ 1990) ("[I]t is well settled that [a district] court `need not give instructions in the precise form or language ____________________ requested by the defendant.'" (quoting United States v. _____________ 7. The district court charged the jury: Beltran, 761 F.2d 1, 11 (1st Cir. 1985))), cert. denied, 500 _______ ____________ For you to find Patrick Tracy not guilty only by reason of insanity, you must be convinced that U.S. 906, 111 S. Ct. 1686, 114 L. Ed. 2d 81 (1991). The Patrick Tracy has proved each of these things by clear and convincing evidence: First, that at the district court felt that Tracy's proffered instruction time of the offense, Patrick Tracy suffered from a severe mental disease or defect. Second, that the misleadingly blurred the distinction between the Government's mental disease or defect prevented him from understanding the nature and quality or burden and Tracy's defense. The definition of "knowingly" wrongfulness of his conduct. put forward by the district court in no sense unfairly *** weakened Tracy's insanity defense, as to which the district If you find that the government has proved all the elements of the offense beyond a reasonable court rendered a clear and accurate instruction.7 Had the doubt and that Patrick Tracy has proven by clear and convincing evidence that he was not sane at the time of the offense, you will find him not guilty only by reason of insanity. -22- jury thought that Tracy, because of his Post-Traumatic Stress Disorder, was unable to appreciate the nature and quality or wrongfulness of his conduct, it could have, pursuant to the district court's instructions, returned a verdict of not guilty only by reason of insanity. C. C. Tracy's third argument is that the district court erred in refusing to instruct the jury on the consequences of a not guilty only by reason of insanity verdict. Specifically, Tracy requested the following charge: [I]f you find Patrick Tracy not guilty by reason of insanity, it becomes the duty of this court to commit Patrick Tracy to a suitable hospital facility. The district court declined to give such an instruction, explaining at length its reasons for its decision. We find no error in the district court's ruling. Recently, in Shannon v. United States, U.S. , 114 S. Ct. _______ _____________ 2419 (1994), the United States Supreme Court concluded that a federal district court is not "required to instruct the jury ___ regarding the consequences to the defendant of a verdict of `not guilty by reason of insanity,' either under the Insanity Defense Reform Act of 1984 [, 98 Stat. 2057 (codified as amended at 18 U.S.C. 17, 4241-4247),] or as a matter of general federal practice." Shannon, 114 S. Ct. at 2422. _______ Although the Court recognized "that an instruction of some -23- form may be necessary under certain limited circumstances,"8 id. at 2428, Tracy has not argued that such circumstances ___ exist here, and our review of the record has revealed none. D. D. Tracy argues that the district court erred in sentencing him under the Armed Career Criminal Act (ACCA), 18 U.S.C. 924(e)(1), which states: In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection. While he concedes that he has two "previous convictions" that satisfy the "violent felony" standard of 924(e)(1), Tracy maintains that the district court could not, for two reasons, use a 1979 Massachusetts conviction for assault and battery on a police officer, to which he pled guilty on September 25, ____________________ 8. The Court said, for example, that, if "a witness or prosecutor states in the presence of the jury that a particular defendant would `go free' if found [not guilty only by reason of insanity], it may be necessary for the district court to intervene with an instruction to counter such a misstatement." Shannon, 114 S. Ct. at 2428. _______ -24- 1979, as the third predicate felony. First, Tracy claims that the 1979 conviction is constitutionally invalid because he was denied his right to have appointed counsel.9 Second, he asserts that the Government failed to provide him with adequate notice that it intended to rely on the 1979 conviction in seeking sentence enhancement under 924(e)(1). We address these arguments separately. i. i. In United States v. Paleo, 967 F.2d 7, 11 (1st Cir. _____________ _____ 1992), we held that "a federal defendant may challenge, in a sentencing proceeding, the constitutional validity of past convictions, used to increase his federal sentence." We said that, if a defendant should seek to contest the validity of a properly evidenced past conviction that is, one documented by a certified copy of a court record of conviction or a presentence report's account of a past conviction that appears constitutionally valid on its face, "he must say that he wishes to do so, explain the constitutional defect, and convince the sentencing court that the conviction was indeed obtained in violation of the federal Constitution," id. at ___ 13. Recently, however, our decision in Paleo was _____ all but overruled by the United States Supreme Court in ____________________ 9. In support of this argument, Tracy submitted, inter alia, __________ an affidavit in which he stated, among other things, that he "was not represented by any attorney regarding this claimed conviction of assault and battery on a police officer." -25- Custis v. United States, U.S. , 114 S. Ct. 1732 (1994). ______ _____________ There the Court held that, in a federal sentencing proceeding, "a defendant has no . . . right (with the sole exception of convictions obtained in violation of the right to counsel)" to "collaterally attack the validity of previous state convictions that are used to enhance his sentence under the ACCA." Id. at 1734. In refusing "to extend the right to ___ attack collaterally prior convictions used for sentence enhancement beyond the right to have appointed counsel established in Gideon,"10 id. at 1738, the Court said, "We ______ ___ think that since the decision in Johnson v. Zerbst11 more _______ ______ than half a century ago, and running through our decisions in Burgett12 and Tucker,13 there has been a theme that _______ ______ failure to appoint counsel for an indigent defendant was a unique constitutional defect," id. (footnotes not in ___ original). Because Tracy challenges the constitutional validity of his 1979 state court conviction on the grounds that he was not represented by counsel, his argument is not ____________________ 10. Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792, 9 L. ______ __________ Ed. 2d 799 (1963). 11. Johnson v. Zerbst, 304 U.S. 458, 58 S. Ct. 1019, 82 L. _______ ______ Ed. 1461 (1938). 12. Burgett v. Texas, 389 U.S. 109, 88 S. Ct. 258, 19 L. Ed. _______ _____ 2d 319 (1967). 13. United States v. Tucker, 404 U.S. 443, 92 S. Ct. 589, 30 _____________ ______ L. Ed. 2d 592 (1972). -26- foreclosed by Custis. In this limited respect, our decision ______ in Paleo still controls. Accordingly, we consider whether _____ Tracy has demonstrated by a preponderance of the evidence, see United States v. Wilkinson, 926 F.2d 22, 28 (1st Cir.), ___ _____________ _________ cert. denied, 501 U.S. 1211, 111 S. Ct. 2813, 115 L. Ed. 2d ____________ 985 (1991), that the 1979 conviction was indeed obtained in violation of Tracy's constitutional right to appointed counsel. The record indicates that Tracy was arrested on June 3, 1979, for uttering a false prescription and for assault and battery on the arresting Town of Brookline police officer. Thereafter, the Brookline Division of the District Court Department issued an order, which read: The Court has determined that [Patrick Tracy] is indigent and that [the] gravity of the charge against the said defendant . . . require[s] that the defendant be represented by counsel. The clerk is hereby directed to immediately notify . . . Neil Rossman of the determination of the court. The docket sheet from the Municipal Court of Brookline indicates that Attorney Rossman appeared for Tracy on June 25, 1979, but was succeeded on August 20, 1979, by Attorney Dianne Hayes. Rossman's exodus is explained by entries indicating that he was fined for failing to appear for hearings scheduled for August 2, and 20, 1979, causing the case to be continued on those two occasions. The entries further show that Tracy finally pled guilty to both charges -27- on September 25, 1979, at which time, insofar as can be gleaned from the docket sheet, he was represented by his listed attorney, Dianne Hayes. These entries are consistent with Hayes's statement in an affidavit submitted to the district court that she remembers "being called on the telephone on or about August 20, 1979, by someone from the District Court of Northern Norfolk, Dedham, and being asked if [she] would accept an appointment for a case in which Attorney Neil Rossman had been previously appointed, but in which case he had failed to appear." Hayes did not say in her affidavit whether she accepted or rejected the appointment, but she did state that she had "serious doubts that [she] represented Patrick Tracy at the time he plead[ed] guilty to . . . assault and battery on a police officer, because [she was] unable to locate a file for him." Hayes said she did not believe that she had ever thrown away or destroyed a closed file. She noted, however, that, on October 24, 1987, the basement of her office, where she kept her closed files, was flooded and that, as a result, some of the older files were placed out of order. The district court decided, in light of this record, that Tracy had failed to show by a preponderance of the evidence that he was denied his right to the appointment of counsel. We find no error. The court documents show that, after Tracy was arrested on June 3, 1979, it was -28- determined that he was an indigent defendant in need of counsel. Attorney Neil Rossman was assigned to his case, and the docket entries reveal that he made an appearance on June 25, 1979. The docket entries further show that, following Rossman's failure to appear and two continuances, Attorney Dianne Hayes became Tracy's attorney of record on August 20, 1979. There is no indication that Hayes thereafter ceased to represent Tracy in these matters or was absent on September 25, 1979, when he pled guilty. There were no further continuances, and no fines were noted as levied against Hayes, as they had been against Rossman, for failing to appear at scheduled hearings. The evidence casting doubt on whether Tracy received legal representation is limited to Tracy's and Hayes's affidavits. The district court did not find Tracy's affidavit credible given Tracy's strong incentive to avoid the ACCA. With regard to Hayes's affidavit, Hayes could not specifically recollect whether or not she represented Tracy, and the district court found there was no suggestion "that she turned down the appointment that she was asked to accept by the court." Moreover, the district court thought that Hayes's inability to locate a file that would confirm her representation of Tracy might well be explained by the flood in her basement that disrupted her filing system. We do not find clear error in the district court's conclusion that -29- Tracy had failed to prove, relative to the 1979 conviction, that he was unrepresented by counsel, in violation of his constitutional right. ii. ii. Tracy also argues that it was error for the district court to use the 1979 assault and battery conviction as one of three predicate violent felonies under 924(e)(1) because he did not receive adequate notice that the Government intended to rely on it. Tracy contends that the indictment, which he claims he had a right to count on, listed only two felonies that would satisfy the requirements of 924(e)(1), and did not mention the 1979 assault and battery conviction. He says he did not learn that the Government intended to use that conviction until he received the presentence report. This delay, he insists, prejudiced his defense strategy and his decision as to whether to plead guilty or go to trial. He suggests that the indictment, having listed some of Tracy's prior felonies that would be ____ used for sentence enhancement, should have listed all the ___ predicate felonies. The district court rejected this same argument at Tracy's sentencing hearing, finding our decision in United ______ States v. Rumney, 867 F.2d 714 (1st Cir.), cert. denied, 491 ______ ______ ____________ U.S. 908, 109 S. Ct. 3194, 105 L. Ed. 2d 702 (1989), to be dispositive. We agree. In Rumney, as here, the Government ______ -30- informed the defendant before trial that it would seek an enhanced sentence under the ACCA, but failed to include all the predicate felonies in the indictment. We held that the Government need not allege in the indictment the three prior felonies that it will use to enhance a defendant's sentence under 924(e)(1). Id. at 717-19; e.g, United States v. ___ ___ ______________ Alvarez, 972 F.2d 1000, 1006 (9th Cir. 1992) (rejecting the _______ appellant's argument that "the district court erred in considering three prior convictions not listed in the indictment, and for which the government did not file [a] written notice of intention to use prior to trial"), cert. _____ denied, 113 S. Ct. 1427, 122 L. Ed. 2d 795 (1993). ______ The Sixth Circuit's decision in United States v. ______________ Pedigo, 879 F.2d 1315 (6th Cir. 1989), which Tracy relies on, ______ is distinguishable. There, the record suggested that the district court had relied upon only two prior convictions, instead of the necessary three. In refusing to take account of a third prior felony conviction, which had been introduced for impeachment purposes at trial, the court of appeals stated that the defendant may not ever have received adequate notice that such conviction would be used to enhance his sentence. Id. at 1319. Here, by contrast, the district ___ court found that Tracy received ample notice of the 1979 conviction: There has been abundant time for the defendant to respond and to challenge the -31- conviction as he has done, and so far as any requirement that the crime be brought to his attention at an earlier stage is concerned, he was at least made aware of it by the time of trial in connection with the preparation of exhibits for use at trial, and I don't find that any further or earlier notice was required on that score. We are satisfied that the district court did not err in considering Tracy's 1979 conviction in enhancing his sentence under 924(e)(1). Affirmed. ________ -32-